O

1

2

3

4

5

6

7

8         **UNITED STATES DISTRICT COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA**

10

11    RAUL CAPETILLO,                    )   Case No. CV 11-10645-SP
                                          )
12                    Plaintiff,          )
                                          )
13            v.                          )   **MEMORANDUM OPINION AND**
                                          )   **ORDER**
14    MICHAEL J. ASTRUE,                  )
      Commissioner of Social Security     )
15    Administration,                     )
                                          )
16                    Defendant.          )
                                          )
17                                        )
                                          )
18    _____ )

19                              **I.**

20                       __INTRODUCTION__

21           On January 5, 2012, plaintiff Raul Capetillo filed a complaint against

22    defendant Michael J. Astrue, seeking a review of a denial of Disability Insurance

23    Benefits ("DIB") and Supplemental Security Income ("SSI").  Both plaintiff and

24    defendant have consented to proceed for all purposes before the Magistrate Judge

25    pursuant to 28 U.S.C. § 636(c).  The parties' briefing is now complete, and the court

26    deems the matter suitable for adjudication without oral argument.

27           Plaintiff presents four disputed issues for decision:  (1) whether the

28    Administrative Law Judge ("ALJ") properly rejected the opinion of Dr. Edwin

1  Haronian, plaintiff's treating physician; (2) whether the ALJ properly considered

2  the combined effect of exertional and non-exertional limitations on plaintiff;

3  (3) whether the ALJ provided a complete and proper assessment of plaintiff's

4  residual functional capacity ("RFC"); and (4) whether the ALJ posed a complete

5  hypothetical question to the vocational expert ("VE") at the administrative hearing.

6  Memorandum in Support of Plaintiff's Complaint ("Pl.'s Mem.") at 2-15;

7  Memorandum in Support of Defendant's Answer ("Def.'s Mem.") at 2-10.

8      Having carefully studied, inter alia, the briefs submitted by the parties and the

9  Administrative Record ("AR"), the court finds that, as detailed herein, there is

10 substantial evidence in the record, taken as whole, to support the ALJ's decision.

11 First, the ALJ properly rejected the opinion of Dr. Haronian as inconsistent with the

12 medical evidence and his own progress notes.  Second, the ALJ did not err by not

13 discussing the combined effects of plaintiff's physical and non-severe mental

14 impairments when plaintiff offered no theory or evidence that the impairments

15 combined to equal a listed impairment.  And because the ALJ properly rejected the

16 opinions of Dr. Haronian and Dr. Marjorie Cohn, an examining psychologist, the

17 ALJ provided a complete and proper assessment of plaintiff's RFC and did not err

18 in omitting the limitations opined by Drs. Haronian and Cohn from the hypothetical

19 questions to the VE.  The court therefore affirms the Commissioner's decision

20 denying benefits.

21                                    **II.**

22                **FACTUAL AND PROCEDURAL BACKGROUND**

23      Plaintiff, who was forty-seven years old on the date of his October 14, 2009

24 administrative hearing, has three years of college education and more than thirty

25 years of work experience in the printing industry.  *See* AR at 28, 151.  His past

26 relevant work includes employment as a printing press operator.  *Id.* at 28.  As part

27 of this work, he assisted customers, answered phones, took out the trash, did

28 vacuuming, prepared and sent out shipments, made deliveries to customers with a

1  pickup truck, operated machinery, and supervised other employees. *Id.*

2  Plaintiff applied for DIB and SSI on January 10, 2008 and February 1, 2008,[1]

3  respectively.  In the applications, plaintiff alleged he had been disabled since

4  February 6, 2006, due to degenerative disc disease of the lumbar spine, diabetes

5  mellitus, stress, anxiety, and high blood pressure as well as neck pain, bilateral

6  shoulder pain, bilateral wrist pain, left knee pain, and right ankle pain. *Id.* at 10, 12,

7  15, 129, 145-49.  Plaintiff's applications were denied initially and upon

8  reconsideration, after which he filed a request for a hearing. *Id.* at 10, 49-53, 56-57.

9  On October 14, 2009, plaintiff, represented by counsel, appeared and testified

10  at a hearing before the ALJ. *Id.* at 25-43.  The ALJ also heard testimony from Kelly

11  Winn-Boaitey, a VE. *Id.* at 43-46.  On March 18, 2010, the ALJ denied plaintiff's

12  request for benefits. *Id.* at 7-22.

13  Applying the well-known five-step sequential evaluation process, the ALJ

14  found, at step one, that plaintiff was not engaged in substantial gainful activity since

15  February 6, 2006, his alleged disability onset date. *Id.* at 12.

16  At step two, the ALJ found that plaintiff suffered from the following severe

17  impairments: degenerative disc disease of the lumbar spine and diabetes mellitus.

18  *Id.* at 12-14.

19  At step three, the ALJ determined that the evidence does not demonstrate that

20  plaintiff's impairments, either individually or in combination, meet or medically

21  equal any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 14.

22  The ALJ then assessed plaintiff's RFC[2] and determined that he could perform

23

24  [1]  Although the ALJ's decision and plaintiff's briefing indicate the date

25  of the SSI application as January 31, 2008, the application itself shows that the filing date was February 1, 2008.  AR at 10, 94-97.

26

27  [2]  Residual functional capacity is what a claimant can still do despite

28  existing exertional and non-exertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step

3

1   light work with the following limitations: "lifting and/or carrying 10 pounds

2   frequently and 20 pounds occasionally; sitting for 6 hours total in an 8-hour

3   workday with normal breaks; standing and/or walking for 6 hours total in an 8-hour

4   workday with normal breaks; frequent bending, squatting, crawling, kneeling, and

5   crouching; occasional climbing stairs; no climbing ladders, ropes or scaffolds; and

6   frequent use of both hands for fine and gross manipulation." *Id.* at 14.

7       The ALJ found, at step four, that plaintiff was "unable to perform any past

8   relevant work" as a printing press operator. *Id.* at 17.

9       At step five, based upon plaintiff's vocational factors and RFC, the ALJ

10  found that, "considering [plaintiff's] age, education, work experience, and residual

11  functional capacity, there are jobs that exist in significant numbers in the national

12  economy that [plaintiff] can perform." *Id.* at 18.  The ALJ therefore concluded that

13  plaintiff was not suffering from a disability as defined by the Social Security Act

14  from February 6, 2006, through March 18, 2010, the date of the decision. *Id*. at 19.

15      Plaintiff filed a timely request for review of the ALJ's decision, which was

16  denied by the Appeals Council on November 9, 2011. *Id.* at 1-4.  The ALJ's

17  decision stands as the final decision of the Commissioner.

18                                  **III.**

19                          **STANDARD OF REVIEW**

20      This court is empowered to review decisions by the Commissioner to deny

21  benefits.  42 U.S.C. § 405(g) (2010).  The findings and decision of the Social

22  Security Administration must be upheld if they are free of legal error and supported

23  by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).

24  But if the court determines that the ALJ's findings are based on legal error or are

25

26

27  evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses
    the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149,

28  1151 n.2 (9th Cir. 2007) (citation omitted).

                                      4

1  not supported by substantial evidence in the record, the court may reject the findings
2  and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033,
3  1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

4      "Substantial evidence is more than a mere scintilla, but less than a
5  preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
6  evidence which a reasonable person might accept as adequate to support a
7  conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
8  F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding,
9  the reviewing court must review the administrative record as a whole, "weighing
10  both the evidence that supports and the evidence that detracts from the ALJ's
11  conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed
12  simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d
13  at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the
14  evidence can reasonably support either affirming or reversing the ALJ's decision,
15  the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.*
16  (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

17                                    **IV.**

18                              **DISCUSSION**

19  **A.    The ALJ Properly Rejected the Opinion of Plaintiff's Treating Physician**

20      Plaintiff contends that the ALJ improperly discredited the opinion of his
21  treating physician, Edwin Haronian, M.D., while giving "greater weight" to the
22  opinion of Nicholas Lin, M.D., who performed a consultative internal medicine
23  evaluation.  Pl.'s Mem. at 2-8; AR at 16.  The court disagrees, for the reasons
24  discussed below.

25      In evaluating medical opinions, Ninth Circuit case law and Social Security
26  regulations distinguish among the opinions of three types of physicians: (1) those
27  who treat the claimant (treating physicians); (2) those who examine but do not treat
28  the claimant (examining physicians); and (3) those who neither examine nor treat

                                      5

the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1527(c) (2012) (prescribing the respective weight to be given the opinions of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830 (citation omitted); *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted).

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons." (citation omitted)). "Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

Here, having duly reviewed the record and the parties' written submissions, the court finds that the ALJ properly rejected the opinion of Dr. Haronian regarding

6

1   plaintiff's RFC.[3]  The ALJ "considered all symptoms and the extent to which these

2   symptoms can reasonably be accepted with the objective medical evidence and

3   other evidence," including "opinion evidence" from treating and examining

4   physicians, and ultimately accorded "greater weight to Dr. Lin's medical opinions"

5   than to Dr. Haronian's.  AR at 14, 16.  While recognizing that Dr. Haronian's

6   opinion "must be given controlling weight if it is well supported by medically

7   acceptable clinical and diagnostic techniques and if it is not inconsistent with the

8   other substantial evidence," the ALJ found the opinion to be "not consistent with

9   the substantial medical evidence" and "not entirely supported by the progress notes"

10   made by Dr. Haronian himself.  *Id.* at 16.

11          In his decision, the ALJ identified entries in Dr. Haronian's progress notes

12   from January 2007 to March 2008 that did not support the physician's October 2008

13   opinion regarding plaintiff's limitations.  The ALJ noted in his summary of Dr.

14   Haronian's January 2007 evaluation that while plaintiff complained of "pain in the

15   neck, lower back, bilateral shoulders, bilateral wrists, left knee, and right ankle,"

16   plaintiff was "intact neurologically," "[l]umbar spine x-rays revealed normal

17   findings," and "motor strength and sensation were within normal limits."  *Id.* at 15,

18   178-80.  The ALJ also found that Dr. Haronian ordered conservative treatments for

19   plaintiff.  *Id.* at 15, 180.  After examining Dr. Haronian's February 2007 report,

20   which included a review of MRIs taken in the previous month, the ALJ pointed out

21

22          [3]     In an October 16, 2008 Permanent and Stationary Report of an
23   Orthopedic Surgical Consultant, Dr. Haronian diagnosed plaintiff as suffering from
     cervical radiculopathy, bilateral shoulder tendinitis, bilateral wrist tendinitis, lumbar
24   faciitis, lumbar radiculopathy, left knee internal derangement, and right ankle
25   tendinitis.  AR at 377.  Dr. Haronian opined plaintiff was "precluded from":
     "extended upward or downward gazing"; "repetitive over-the-shoulder activities";
26   "power gripping on a repetitive basis"; "heavy lifting activities"; "repetitive
27   squatting, repetitive kneeling, and repetitive crouching"; and "walking on [un]even
28   grounds."  *Id.* at 378; *see id.* at 16.

1   "[n]eurodiagnostic studies revealed normal findings" and "Dr. Haronian advised

2   [plaintiff] to continue with conservative treatments." *Id.* at 15, 175-76, 419-28.

3   Next, the ALJ noted the March 2007 report in which Dr. Haronian "advised

4   [plaintiff] to continue with conservative treatment." *Id.* at 15, 173-74.  Moreover,

5   the ALJ observed that Dr. Haronian provided plaintiff with medication to control

6   pain and advised him to return in four to six weeks, but plaintiff did not return until

7   July 2007. *Id.* at 15.  The ALJ then reviewed Dr. Haronian's notes from plaintiff's

8   August 2007 visit.  Plaintiff complained of left shoulder pain and low back pain

9   radiating down to the extremities, but Dr. Haronian told plaintiff to stay with

10  conservative treatment. *Id.* at 15, 171-72.  The ALJ remarked that plaintiff did not

11  follow Dr. Haronian's recommendation of another visit in six weeks and did not

12  return until March 2008, some seven months later. *Id.* at 15, 169.

13      Separately, the ALJ identified as medical evidence the electromyogram and

14  nerve conduction studies that plaintiff underwent in January 2007. *Id.* at 14,

15  415-18.  The ALJ observed that "[b]oth tests revealed normal findings." *Id.* at 14.

16      Despite a series of normal findings from structural and neurodiagnostic

17  examinations that he had noted and continuing conservative treatment

18  recommendations that he had made, Dr. Haronian wrote in his October 2008 report

19  that plaintiff was "precluded from": "extended upward or downward gazing,"

20  "repetitive over-the-shoulder activities," "power gripping on a repetitive basis,"

21  "heavy lifting activities," "repetitive squatting, repetitive kneeling, and repetitive

22  crouching," and "walking on [un]even grounds." *Id.* at 378.  Finding discrepancies

23  between Dr. Haronian's opinion in the October 2008 report and his own notes and

24  observations prior to October 2008, the ALJ determined the October 2008 report to

25  be "not consistent with the substantial medical evidence" and "not entirely

26  supported by [Dr. Haronian's own] progress notes." *Id.* at 16.  This is a sufficiently

27  specific and legitimate reason for rejecting Dr. Haronian's opinion. *See Connett v.*

28  *Barnhart*, 340 F.3d 871 (9th Cir. 2003) (ALJ properly rejected treating physician's

1   conclusions regarding plaintiff's limitations based on the determination that the

2   physician's own treatment notes did not support the conclusions); *Batson v.*

3   *Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating

4   physician's opinions that are conclusory, brief, and unsupported by the record as a

5   whole or by objective medical findings); *Burkhart v. Bowen*, 856 F.2d 1335,

6   1339-40 (9th Cir. 1988) (ALJ properly rejected treating physician's opinion, which

7   was unsupported by medical findings, personal observations, or test reports).

8          While rejecting Dr. Haronian's opinion as unsupported by medical evidence

9   or by his own progress notes, the ALJ accepted the opinion of Dr. Nicholas Lin,

10  which was reported in April 2008, as a more reliable assessment of plaintiff's

11  functional limitations.  The ALJ noted from Dr. Lin's report that despite plaintiff's

12  subjective complaints of persisting pain, plaintiff "did not have a regular physician"

13  and went to a family member for medication.  AR at 15, 327.  The ALJ also noted

14  that Dr. Lin's physical examination of plaintiff yielded "unremarkable" findings,

15  leading Dr. Lin to opine that plaintiff was "capable of performing medium

16  exertional activities including frequent bending, stooping, crouching, kneeling, and

17  fine and gross manipulation." *Id.* at 16, 328-31.  The ALJ also observed that "[n]o

18  other limitations were noted" by Dr. Lin.  *Id.* at 16.  The ALJ found Dr. Lin's

19  opinion to be "well reasoned and consistent with the record as a whole," thus

20  deserving of "greater weight" than Dr. Haronian's, particularly when the two

21  opinions "differ regarding [plaintiff's] functional capacities." *Id.*  At the same time,

22  the ALJ determined that Dr. Lin's finding of "medium residual functional capacity

23  . . . [was] not entirely supported by the medical evidence." *Id.*  Pointing particularly

24  to the MRIs of plaintiff's lumbar spine (which showed "a posterior annular tear with

25  a 3-4 mm disc herniation at the L5-S1 level") and shoulders (which revealed "biceps

26  tendinitis as well as mild infraspinatus tendinitis"), the ALJ reduced plaintiff's RFC

27  to "light exertional activity." *Id.* at 16, 175-76, 419-28.

28         In his descriptions and analyses of the opinions by Dr. Haronian and Dr. Lin,

9

1  the ALJ identified legitimate and sufficiently specific reasons to discount Dr.

2  Haronian's opinion and accord greater weight to Dr. Lin's.  Concurrently, the ALJ

3  made an independent determination of plaintiff's RFC based on his evaluation of

4  Dr. Lin's opinion and the objective evidence.  Accordingly, the ALJ properly

5  rejected Dr. Haronian's opinion regarding plaintiff's RFC.

6  **B.**      **The ALJ Did Not Err by Not Discussing the Combined Effects of**

7          **Plaintiff's Physical and Non-Severe Mental Impairments**

8          Plaintiff argues that "the ALJ failed to consider the combination of all of

9  plaintiff's physical and mental limitations on his ability to perform full-time,

10  substantial gainful activity."  Pl.'s Mem. at 8.  Citing 20 C.F.R. § 404.1523 and

11  § 416.923, plaintiff asserts the mental impairments that he "may still have," even if

12  not sufficiently severe under an RFC analysis, "should have been taken into account

13  in combination with the physical impairments and physical non-exertional

14  limitations" in the disability determination process.  *Id.* at 9-10.

15          The sections of the Code of Federal Regulations to which plaintiff cites state

16  that the Social Security Administration, as part of step three of the five-step

17  analysis, "will consider the combined effect of all . . . impairments [both physical

18  and mental] without regard to whether any such impairment, if considered

19  separately, would be of sufficient severity."  20 C.F.R. § 404.1523 and § 416.923.

20  The same sections indicate that if "a medically severe combination of impairments"

21  is found, "the combined impact of the impairments will be considered throughout

22  the disability determination process."  *Id.  See Smolen v. Chater*, 80 F.3d 1273,

23  1290 (9th Cir. 1996) ("[T]he ALJ must consider the combined effect of all of the

24  claimant's impairments on her ability to function, without regard to whether each

25  alone was sufficiently severe."); *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir.

26  1985) (ALJ must consider a claimant's physical and psychological impairments in

27  combination and not merely individually).  An ALJ, however, is "not required to

28  discuss the combined effects of a claimant's impairments or compare them to any

10

1   listing [in 20 C.F.R. Part 404, Subpart P, Appendix 1] in an equivalency

2   determination, unless the claimant presents evidence in an effort to establish

3   equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  If the

4   claimant "has offered no theory, plausible or otherwise, as to how [his physical and

5   mental impairments] combined to equal a listed impairment . . . [n]or . . . evidence

6   that shows that his combined impairments equal a listed impairment," the ALJ does

7   not err by not discussing the combined effects of the claimant's impairments or by

8   concluding that the impairments did not equal a listed impairment. *Lewis v. Apfel*,

9   236 F.3d 503, 514 (9th Cir. 2001).

10        Here, the ALJ concluded in step three of his analysis that plaintiff "does not

11   have an impairment or combination of impairments that meets or medically equals

12   one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  AR at

13   14.  The ALJ did address plaintiff's complained-of impairments individually,

14   including the alleged mental impairments at step two.  The ALJ found plaintiff does

15   not suffer from a severe mental impairment.[4]  *Id.* at 12-14.  But the ALJ did not

16   discuss the combined effects of plaintiff's impairments, except to indicate that he

17   _____

18        [4]       Plaintiff does not directly challenge the ALJ's evaluation of the
19   opinions of the treating psychologist and physician and consulting psychologist.  In
     determining whether plaintiff's claimed mental impairments were severe, the ALJ
20   relied on the opinion of Harrell Reznick, Ph.D., who performed a May 2008
21   consultative psychological evaluation of plaintiff for "complaints of multiple
     physical problems as well as feeling depressed, hypersomnia alternating with
22   insomnia, racing thoughts, obsessive-compulsive traits, suicidal thoughts, anger,
23   tension, and lapses in attention, concentration and memory."  AR at 13, 333-39.
     Finding Dr. Reznick's opinion that plaintiff had "no diagnosis" to be "well reasoned
24   and consistent with the record as a whole," the ALJ found Dr. Reznick's opinion to
25   carry "great[er] probative weight" than those of Marjorie Cohn, Ph.D. (who
26   conducted a psychological evaluation of plaintiff in February 2007 and diagnosed
     plaintiff with "major depressive disorder, single episode, mild" and "panic disorder
27   without agoraphobia") and Herbert Marshak, M.D. (who diagnosed plaintiff in July
28   2007 with "depression with anxiety features").  *Id.* at 12-13, 185-325, 333-339.

1    had "considered all symptoms and the extent to which these symptoms can
2    reasonably be accepted as consistent with the objective medical evidence and other
3    evidence." *Id.* at 12-17.

4         Because plaintiff did not offer any theory as to how his physical and mental
5    impairments combined to equal a listed impairment, however, the ALJ was not
6    required to discuss the combined effects. *See Lewis*, 236 F.3d at 514.  Indeed,
7    plaintiff has not pointed to any evidence that shows that the combined impairments
8    equal a listed impairment.  The record does contain evidence of complaints of and
9    treatments for depression (accompanied by anxiety) and panic disorder.  AR at
10   185-325.  But the ALJ relied on the consultative psychological evaluation of
11   plaintiff by Harrell Reznick, Ph.D., whose opinion the ALJ found to be "well
12   reasoned and consistent with the record as a whole." *Id.* at 16.  The ALJ then
13   concluded that plaintiff did not "suffer from any severe mental impairment" and the
14   mental impairments resulted in "no mental impairment-related limitations,"
15   specifically "no restriction of activities of daily living; mild difficulties in
16   maintaining social functioning; no difficulties in maintaining concentration,
17   persistence or pace; and no episodes of decempensation, each of extended
18   duration." *Id.* at 13-14, 338.  As defendant notes in his briefing, plaintiff "does not
19   contest this finding" in his brief.  Def.'s Mem. at 7; *see* Pl.'s Mem. at 9.  Nor does
20   plaintiff's briefing contain any specific assertion as to how the physical impairments
21   combined with the mental impairments (which the ALJ found to be non-severe) to
22   produce "a medically severe combination of impairments." 20 C.F.R. § 404.1523
23   and § 416.923.  In fact, as defendant points out, plaintiff merely speculates that he
24   "*may* still have . . . non-exertional mental limitations, [which] should be taken into
25   account in combination with the physical impairments and physical non-exertional
26   limitations."  Pl.'s Mem. at 10 (emphasis added); *see* Def.'s Mem. at 7.
27        Because plaintiff has not shown how his physical and mental impairments
28   combined to produce a medically severe impairment and has merely speculated as to

12

1  the persistence of mental limitations, the court finds the ALJ was not required to

2  address the combined effects of plaintiff's physical and mental impairments,

3  particularly as the ALJ found all of the mental impairments to be individually non-

4  severe and to create no functional limitations. *See Burch*, 400 F.3d at 683; *Lewis*,

5  236 F.3d at 514. Thus, the ALJ did not err by not discussing the combined effects

6  of the impairments in his decision.

7  **C.     The ALJ Provided a Complete and Proper Assessment of Plaintiff's**

8         **Residual Functional Capacity**

9         Plaintiff argues that the ALJ "failed to set forth a complete and accurate

10  assessment by not properly considering Dr. Haronian's opinion as well as Dr.

11  [Marjorie] Cohn's opinion relating to the mental limitations." Pl.'s Mem. at 12.

12  Plaintiff contends that because the ALJ failed to properly consider these opinions,

13  "the ALJ's RFC assessment should be deemed incomplete and unsupported by

14  substantial evidence." *Id.*

15        In determining a claimant's RFC, an ALJ must consider all relevant evidence

16  in the record, including medical records, lay evidence, and the effects of symptoms

17  (including pain) that are reasonably attributed to a medically determinable

18  impairment. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see*

19  Social Security Ruling ("SSR") 96-5p,[5] 1996 WL 374183, at *5 (July 2, 1996); 20

20  C.F.R. § 404.1545(a)(3) (2012) (a claimant's assessed RFC is based upon all the

21  relevant evidence in the case record). Here, as discussed above, the ALJ determined

22

23

24        [5]      "The Commissioner issues Social Security Rulings to clarify the Act's
    implementing regulations and the agency's policies. SSRs are binding on all
25  components of the [Social Security Administration]. SSRs do not have the force of
    law. However, because they represent the Commissioner's interpretation of the
26  agency's regulations, we give them some deference. We will not defer to SSRs if
    they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246
27  F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

28

1    that plaintiff has the RFC to perform light work[6] with the following limitations:

2    "lifting and/or carrying 10 pounds frequently and 20 pounds occasionally; sitting for

3    6 hours total in an 8-hour workday with normal breaks; standing and/or walking for

4    6 hours total in an 8-hour workday with normal breaks; frequent bending, squatting,

5    crawling, kneeling, and crouching; occasional climbing stairs; no climbing ladders,

6    ropes or scaffolds; and frequent use of both hands for fine and gross manipulation."

7    AR at 14.  The court finds that the ALJ's RFC finding is supported by substantial

8    evidence.

9          The ALJ determined plaintiff's RFC as "light exertional activity," after

10   considering the opinions of all the treating and consulting physicians and

11   psychologists and giving "great probative weight" to the opinions of Dr. Lin, a

12   consultative examining physician, and of Dr. Reznick, a consultative examining

13   psychologist.  *Id.* at 13-17.  As discussed above, the court finds that the ALJ

14   properly accorded greater weight to Dr. Lin's opinion on plaintiff's physical

15   impairments than to Dr. Haronian's, although the ALJ departed from Dr. Lin's RFC

16   determination of medium work and reduced it to light work.  *See id.* at 16.  As for

17   the plaintiff's mental impairments, the ALJ accorded greater weight to

18   Dr. Reznick's opinion than to the opinions of Marjorie Cohn, Ph.D. (who conducted

19   a psychological evaluation of plaintiff in February 2007) and Herbert Marshak,

20   M.D. (who evaluated plaintiff in July 2007).  *Id.* at 12-13, 185-325, 333-339.

21   Accepting Dr. Reznick's diagnostic impression as credible, the ALJ determined

22   plaintiff did not suffer from any severe mental impairments or had any functional

23

24   _____

25         [6]    "Light work involves lifting no more than 20 pounds at a time with
      frequent lifting or carrying of objects weighing up to 10 pounds. Even though the
26   weight lifted may be very little, a job is in this category when it requires a good deal
      of walking or standing, or when it involves sitting most of the time with some
27   pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567 and 416.967.
      Light work also involves "the ability to do substantially all of these activities."  *Id.*
28

14

1   limitations related to a mental impairment.  *Id.* at 13-14, 338.  As noted above,

2   plaintiff does not contest the ALJ's findings on the mental impairment claim and

3   merely speculates, without presenting a theory on the combination of impairments,

4   that he "may still have many of the[] non-exertional mental limitations, [which]

5   should be taken into account in combination with the physical impairments and

6   physical non-exertional limitations."  Pl.'s Mem. at 11; *see* Def.'s Mem. at 7.  Thus,

7   as determined above, the ALJ did not err in not finding limitations arising from

8   mental impairments or from the combination of impairments.

9        Accordingly, the ALJ provided a complete and proper assessment of

10  plaintiff's RFC and properly determined the RFC to be light exertional activity with

11  the additional stated limitations.

12  **D.     The ALJ Did Not Err in Omitting the Limitations Opined by**

13  **        Dr. Haronian and Dr. Cohn from the Hypothetical Questions to the**

14  **        Vocational Expert**

15       Plaintiff contends "[t]he ALJ erred in not incorporating into the hypothetical

16  questions all of the plaintiff's limitations."  Pl.'s Mem. at 15.  Plaintiff specifically

17  asserts that "the ALJ should have included the limitations opined by both

18  Dr. Haronian and Dr. Cohn in the hypothetical questions posed to the VE."  *Id.*

19       An ALJ may rely on a VE's testimony given in response to a hypothetical that

20  contains "all of the limitations that the ALJ found credible and supported by

21  substantial evidence in the record."  *Bayliss*, 427 F.3d at 1217.  The ALJ is not

22  required to include limitations that are not in his findings.  *Rollins v. Massanari*,

23  261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th

24  Cir. 2001).  Here, the ALJ posed two hypothetical questions to the VE – one for

25  medium exertion (AR at 43-44) and the other for light exertion (*id.* at 45).  In the

26  end, as discussed above, the ALJ found only light exertional activity as plaintiff's

27  RFC.  *See id.* at 16.  Because the ALJ's hypothetical questions to the VE were

28  properly based on his RFC finding and the ALJ properly rejected the limitations

1  opined by Dr. Haronian and Dr. Cohn, the ALJ consequently did not err in not
2  including the restrictions found by the two physicians in the hypothetical questions
3  to the VE.

**V.**

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING
the decision of the Commissioner denying benefits and dismissing this action with
prejudice.

Dated: October 25, 2012

_____

SHERI PYM
UNITED STATES MAGISTRATE JUDGE